## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-03115-MJ-D'ANGELO

UNITED STATES OF AMERICA

v.

ERIC LAVENCE SAMSON,

**Defendant.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?  No

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:       /s/ Elizabeth Hannah
          _____
          Elizabeth Hannah
          Assistant United States Attorney
          Court ID No. A5503171
          99 Northeast 4th Street
          Miami, FL 33132
          (305) 961-9019
          Elizabeth.Hannah@usdoj.gov

·AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>ERIC LAVENCE SAMSON,<br><br><br>_____<br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 25-03115-MJ-D'ANGELO

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ May 30, 2025 _____ in the county of _____ Miami-Dade _____ in the

_____ Southern _____ District of _____ Florida _____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Giovanni Jessie Menocal, Special Agent FBI
_____
*Printed name and title*      FBI 32170

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by FaceTime.

Date: _____ 6/04/2025 _____

_____
*Judge's signature*

City and state: _____ Miami, Florida _____

Honorable Ellen F. D'Angelo, United States Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Giovanni Jessie Menocal, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent with the Federal Bureau of Investigation ("FBI"), United States Department of Justice ("DOJ") and have been assigned to the Miami Field Office since June 2024. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, federal offenses, including but not limited to offenses involving firearms offenses, including violations of Title 18, United States Code, Section 922. I am authorized to apply for and execute both search warrants and arrest warrants for offenses enumerated in Titles 18 and 21 of the United States Code.

2.     I am currently a member of the Miami-Dade County Safe Streets and Violent Gang Task Force. As part of my professional duties and responsibilities, I have become familiar with the investigative methods and enforcement of state and federal drug laws. I have also become versed in the methodology utilized in firearms distribution. I have also conducted numerous physical and electronic surveillance.

3.     This Affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging ERIC LAVENCE SAMSON ("SAMSON") with being a felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

4.     The statements in this Affidavit come from my personal observations, my training and experience, and my review of documents and information obtained from other agents and

1

witnesses. I have not included in this Affidavit each and every fact and circumstance known to me, but only the facts and circumstances sufficient to establish probable cause.

## PROBABLE CAUSE

5.     SAMSON is a convicted felon. In or around January 2012, SAMSON pled no contest and was convicted of the following charges in York County, South Carolina: trafficking heroin; trafficking Roxicontin; possession with intent to deliver Roxicontin in close proximity to a school; distribution of Roxicontin in close proximity to  a school; and possession with intent to deliver Xanax. *See State of South Carolina v. Samson*, Case Nos. M601852; M601853; M601854; M601855; and M601856. SAMSON was sentenced to ten years of imprisonment for these offenses.

6.     On May 30, 2025, I was driving to an unrelated meeting when I observed a man, later identified as SAMSON, at the corner of 9th Avenue and NW 80th Street, Miami, Florida, openly brandishing a firearm with a weapon mounted light in the vicinity of the general public surrounding him. I continued driving southbound on 9th Avenue while maintaining a visual of SAMSON and called and requested additional law enforcement officers to the area for assistance. Shortly after backup arrived, FBI agents observed SAMSON approaching the porch of a residence located at 8001 NW 9th Avenue, Miami, Florida (the "Residence"). The agents announced their presence and identified themselves as law enforcement and gave SAMSON verbal commands to step off the porch. SAMSON did not immediately comply and instead entered the Residence and then remerged approximately ten seconds later from the front door with his hands above his head. SAMSON was then detained without incident.

7.     During the detention process, agents observed small Ziplock-style baggies with a green plantlike substance, consistent with the appearance of marijuana, and several denominations

2

of cash in SAMSON's hand. SAMSON told the agents that he had been carrying a "BB" or "airsoft" style gun and had given it to one of the "chicos" that was standing with him on the porch. Law enforcement patted SAMSON down for officer safety. This pat down revealed an empty inside the waistband holster clipped to the front of SAMSON's shorts. SAMSON claimed that the holster was for the "BB" or "airsoft" gun. SAMSON was also in possession of a small Mentos mints container in his front pocket, which contained several small blue Ziplock baggies containing a white rock like substance, consistent with the appearance of crack cocaine. Both the suspected marijuana and suspected crack cocaine were later submitted for lab testing. The lab results remain pending.

8. Law enforcement inquired whether SAMSON had any firearms on his person or in his possession for officer safety. SAMSON told law enforcement that he regularly kept a firearm on his person for his own safety. SAMSON also stated that law enforcement would find ammunition inside of the Residence.

9. SAMSON then volunteered to law enforcement that he was a convicted felon but stated that he was not convicted in the state of Florida. SAMSON also stated that he previously served approximately ten years in prison for his prior convictions.

10. SAMSON's mother, Y.S., who was inside of the Residence during SAMSON's detention, spoke with law enforcement and claimed that her son did not live at the Residence. Y.S. told law enforcement that SAMSON visited daily and would engage in narcotics sales in and around her residence. Y.S. also told law enforcement that there was a rifle on the couch, which law enforcement could see from the front doorway of the Residence. Y.S. gave consent for law enforcement to search the Residence and asked law enforcement to remove any firearms from the Residence.

3

11. While law enforcement was speaking to Y.S., from the front door of the Residence, law enforcement observed what appeared to be a rifle and a pistol in plain view on the couch. Y.S. asked law enforcement to remove the firearms. The Taurus pistol was visible but partially covered by an open sneaker box and some mail addressed to "ERIC SAMSON." The open sneaker box contained several shotgun shell casings. Law enforcement inspected the rifle and determined it to be a BB/airsoft style-gun and the pistol to be a .40 caliber, Taurus model TH 4D, serial number ACL513076. The Taurus pistol was removed from the Residence. The Taurus pistol contained a magazine loaded with .40 caliber Hornady ammunition and had one live round in the chamber.

12. During a post-*Miranda* interview, SAMSON told law enforcement that there were additional firearms located inside of the Residence. SAMSON stated that he had been recently shot during a drive-by shooting in the front yard of the Residence. SAMSON also admitted that he sells crack cocaine to make money and pay for his bills.

13. Local law enforcement obtained and executed a residential search warrant for the Residence. Law enforcement discovered four firearms during the search of the Residence, including: (a) a loaded semi-automatic Remington model 1100 short barrel shotgun; (b) a loaded Smith and Wesson .357 Magnum Revolver; (c) a Glock 42; and (d) a Ruger LCP Max (collectively the "Firearms"). Law enforcement also found various calibers of live ammunition and other items of evidentiary value, including but not limited to, several holsters and unloaded gun magazines during the search of the Residence.

14. The Firearms recovered from the Residence were manufactured outside the state of Florida.

15. Law enforcement re-Mirandized and re-interviewed SAMSON following the search of the Residence. During this interview, SAMSON told law enforcement that he had

4

possessed all the Firearms recovered during the search warrant of the Residence at some point. SAMSON also admitted that he saw the police lights on the vehicles when he was first approached on the porch of the Residence and did not want to be caught with a firearm, which is why he then entered the Residence to remove a firearm from his waistband. SAMSON told law enforcement that he was "grateful" that they had approached him the way they had. SAMSON explained that had law enforcement done otherwise, SAMSON may have confused them for the individuals who shot him previously, and then made a shooting gesture with his hands. Law enforcement understood this gesture to mean that SAMSON may have attempted to shoot at law enforcement when he was approached on the porch had they not identified themselves as the police.

16. SAMSON signed a consent to search form for law enforcement to search his cellphone. Inside of SAMSON's cellphone, law enforcement found a photograph taken on May 20, 2025, of a gun appearing consistent with the Ruger LCP Max recovered during the search warrant of the Residence. Law enforcement also discovered another photograph taken on May 23, 2025, depicting six firearms laid out on a bed next to a brown leather holster. Four of the six firearms depicted in that photograph appeared consistent with four of the firearms recovered during the search warrant of the Residence.

[THIS SECTION LEFT INTENTIONALLY BLANK]

5

## CONCLUSION

17.   Based on the above facts, I respectfully submit that there is probable cause to support a criminal complaint charging ERIC LAVENCE SAMSON with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1).

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
GIOVANNI JESSIE MENOCAL
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1
by Face Time this ___4th___ day of June 2025.

_____
HONORABLE ELLEN F. D'ANGELO
UNITED STATES MAGISTRATE JUDGE

6